JAMES H. ROTHWELL v. COUNTY OF KNOX ET AL.

FILED JUNE 5, 1901. No. 9,738.

Commissioner's opinion. Department No. 1.

1. **Taxes: ASSESSMENT: JURISDICTION: INJUNCTION.** An injunction will lie to restrain the collection of personal taxes by distress, when the assessment was without jurisdiction.

2. **Injunction: JURISDICTION: IRREGULARITIES.** Where the taxing officer acts with jurisdiction, injunction will not lie because of mere irregularities in assessment.

ERROR from the district court for Knox county. Tried below before ROBINSON, J. *Reversed.*

*Berryman & Meserve,* for plaintiff in error.

*W. L. Henderson* and *O. W. Rice, contra*

DAY, C.

The relative positions of the parties plaintiff and defendants being the same in this court as in the court below, they will be so designated here. Plaintiff brought an action in the district court for Knox county, against defendants, praying for a permanent order of injunction restraining the defendants, the county of Knox and J. S. Patton its treasurer, from in any manner attempting

to enforce the collection of certain taxes mentioned in the petition.

The application for an injunction was in the form of a petition, verified affirmatively and set forth two causes of action.

To this petition a demurrer was filed upon the ground that it did not state facts sufficient to constitute a cause of action.    This demurrer was sustained and plaintiff electing to stand on his petition, a judgment of dismissal was entered at the costs of plaintiff, to review which, the case is brought to this court.

The petition, among other averments, charges, that in April and May, 1893, the plaintiff and his brother Samuel J. Rothwell, one of the defendants, were residents of Creighton Township, Knox county; that Samuel J. Rothwell was then the owner of 500 head of cattle—the ranch, yard and place of keeping and feeding said cattle being in Creighton township, and that said cattle were duly assessed to Samuel J. Rothwell on the 17th day of May, 1893, by the assessor of said township; that during the months of March, April and May, 1893, 435 head of said cattle were driven from Creighton township to South Dakota for pasturage, and in transit were driven into Raymond township, Knox county, on the 3d day of April, 1893. On May 2, 1893, the said 435 head of cattle, while the same were yet in transit, were assessed by the assessor of Raymond township, to Rothwell Brothers, meaning thereby to assess said cattle as the property of the plaintiff and Samuel J. Rothwell jointly.    On the 14th day of June, 1893, the board of supervisors of Knox county caused the assessment of said cattle, made on the 17th day of May, 1893, to Samuel J. Rothwell, to be canceled and annulled and caused the schedule of the assessment made in Raymond township to be changed by adding the name of S. J. Rothwell thereto, and by resolution, attempted to make said assessment of said cattle in Raymond township a valid and binding assessment against the plaintiff and S. J. Rothwell.    That plaintiff never resided in or

had a residence or domicile in Raymond township; that no partnership 'existed between him and S. J. Rothwell; that he was not and never had been the owner of, nor in any manner interested in said cattle, or any of them, and that all the proceedings, actions and things were done and performed without his notice or consent and against his will; that the amount of the tax so levied in Raymond township upon said cattle amounted to the sum of $160 with interest thereon as provided by law; that if a distress warrant is allowed to be issued and a levy made, it will cause plaintiff great annoyance, inconvenience and expense, and bring upon him irreparable injury, and that no adequate remedy at law is available to him.

For a second cause of action it is alleged, that on May 30, 1892, 400 head of cattle were assessed to plaintiff in Washington township by one Abrams, the assessor of said township, which assessment was without plaintiff's knowledge or consent and against his will; that said year he had no cattle or other property whatever in said township, and had no interest of any kind or nature whatever in any cattle in said township; that the claim for taxes on said assessment is barred by statute of limitations; that the taxes on the pretended assessment amounts to $51.90; that he had no notice, until the spring of 1897, that any pretended assessment had been made against him; that none of said taxes have been paid, and they stand upon the record against him; that the county treasurer threatens to issue a distress warrant against this plaintiff and cause his property to be levied upon, and if not restrained will levy upon his property and sell same to satisfy said tax and cause the plaintiff great annoyance, inconvenience, hardship and irreparable injury and that for this he has no adequate remedy at law.

The argument on behalf of defendants proceeds upon the theory that the tax was not assessed for an illegal or unauthorized purpose and that therefore an injunction will not lie to restrain its collection, and section 144 of

chapter 77, article 1, Compiled Statutes, is cited in support of this contention. This section, so far as it has application to the point in controversy, is as follows: "No injunction shall be granted by any court or judge in this state, to restrain the collection of any tax, or any part thereof, hereafter levied, nor to restrain the sale of any property for the non-payment of any such tax, except such tax, or the part thereof enjoined, be levied or assessed for an illegal or unauthorized purpose." The provisions of this section of the statute apply with equal force to taxes levied upon real or personal property. It will be noted that the above section relates to a tax which is apparently legal, but by reason of irregularities or error, is open to attack and has no reference to a tax which is absolutely void.

This court in *Touzalin v. City of Omaha*, 25 Nebr., 817, construing a statute, in almost the exact language above quoted, says: "Injunctions to prevent the collection of taxes are not favored, and should only be granted where the relief at law is wholly inadequate. If, however, the tax is void, in other words, is levied without authority of law, the forms of law nevertheless being used to cast a cloud upon the title of the party's real estate, and thereby diminish its value, the power of the legislature to close the doors of the courts to aid the tax-payer is very doubtful. A void tax is no tax. How then can the statute debar the tax-payer from enjoining the unlawful sale of his property to pay such alleged taxes? The law might as well authorize the seizure of the property of A by force and violence, and without authority, to pay the debts of a municipality, as to seize and sell such property under a void assessment. In either case the tax-payer may invoke the aid of the courts to protect him from wrong and oppression." *Sioux City Bridge Co. v. Dakota County*, 61 Nebr., 75; *Harmon v. City of Omaha*, 53 Nebr., 164; *Morris v. Merrell*, 44 Nebr., 423; *Chicago, B. & Q. R. Co. v. Nebraska City*, 53 Nebr., 453.

In *Earl v. Duras*, 13 Nebr., 234, it was said: "Where

taxes are levied upon real estate without authority of law, a court of equity may enjoin the collection of the same."

In *Chicago, B. & Q. R. Co. v. Cass County,* 51 Nebr., 369, it was said: "The district courts of this state are, by the constitution, invested with general equity jurisdiction, and this includes the authority to enjoin the collection of a void tax; and this jurisdiction the legislature can neither take away nor impair."

The defendants, while recognizing the rule as laid down in this state, by the above citation, contend that it has no application to a tax, however illegal and void, levied upon personal property. We are aware that this contention is supported by some of the leading text writers on the subject of taxation, and a number of decisions of the courts of last resort can be found upholding such a doctrine, the basis of the reasoning being that an adequate remedy at law exists. But it seems to us in view of the decisions of our own court, construing our statute, as to the extent of the lien created by a levy of taxes upon personal property, that such a rule ought not to prevail in this state.

In *Reynolds v. Fisher,* 43 Nebr., 172, it is said: "The taxes assessed on personal property are not confined as a lien to the property upon which they are assessed, but are a lien upon all personal property owned by the person assessed, during the existence of the taxes, from and after the delivery of the tax list to the county treasurer for collection." *Farmers Loan & Trust Co. v. Memminger,* 48 Nebr., 17.

Thus it will be seen that unpaid taxes levied upon personal property are a general lien upon all the personal property of the tax-debtor. He can not sell or convey his property freed from the claim for taxes; so long as they remain unpaid they are a cloud upon his title and a hindrance to the free enjoyment of his property. If the collection of a void tax will be enjoined when levied upon real estate, the writer can conceive of no good reason why

it may not be enjoined when levied upon personal property; especially is this true where the personal tax becomes a lien which follows the property. The only way by which this tax could be canceled and the lien annulled was by the payment, or by recourse to a court of equity for relief. If the tax levied was void the county would have no legal right to it and all will concede that had it been paid under protest, the amount so paid could be recovered. It would be a vain thing for the law to require a tax to be paid, the payment of which would immediately give rise to an action for its recovery.

We think the true principle is concisely stated in *Drake v. Phillips*, 40 Ill., 388, 393, in the following language: "When persons authorized to lay a tax exercise the power for a purpose authorized by law, courts of equity refuse to take jurisdiction, simply because some formality or legal requirement in making the levy is wanting, if it is laid for an authorized purpose and by the persons designated by law. In such a case, if wrong ensue, the party injured has a complete remedy at law. But when officers or individuals have no legal authority to lay a tax, and they assume the right; or when persons are vested with legal authority to lay a tax for a specified purpose, but instead of exercising that power they proceed to impose a tax which the law has not authorized, or lay it for fraudulent or unauthorized purposes,—then a court of equity will interpose to afford preventive relief, by restraining the exercise of powers perverted to fraudulent or oppressive purposes."

The facts alleged in the petition show, that the assessor in Raymond township had no authority to assess the cattle in the name of plaintiff, in whole or in part. Plaintiff did not reside in Raymond township; no partnership existed between him and S. J. Rothwell; he was not the owner of these cattle or any of them, and never had been, and had no interest in them, as against this plaintiff; the assessor had no jurisdiction to make the assessment and his action is void.

Plaintiff's second cause of action rests upon the same basis; he charges he had no property in Washington township, and resided in Creighton township; if so there was no jurisdiction to make the assessment.

There is no principle of law or good morals which requires a person to pay taxes upon property which he does not own or in which he has no interest.

From the foregoing observations, it follows that the learned district judge erred in sustaining the demurrer to the petition and in dismissing said cause, and it is therefore recommended that the cause be reversed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

REVERSED.