IN RE VALUATION AND EQUALIZATION OF REAL PROPERTY IN THE STATE OF NEBRASKA FOR 1965.
COUNTY OF LOUP, APPELLANT, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT OF THE STATE OF NEBRASKA, APPELLEE.

143 N. W. 2d 890

Filed July 1, 1966. No. 36176.

A. F. Alder, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and DITTRICK, District Judge.

BOSLAUGH, J.

This is an appeal by Loup County, Nebraska, from the order of the State Board of Equalization and Assessment increasing the valuation of rural land and improvements

as shown by the 1965 abstract of assessment for Loup County.

The county contends that the order of the state board increasing the valuation of rural property was arbitrary and capricious.

The testimony with respect to Loup County shows that Loup County was reappraised in 1957; that new improvements have been assessed by the county board in accordance with the guide left by the appraisal company; that, except in Custer County, the land along the county line in adjacent counties is assessed approximately the same as the land in Loup County along the county line; that the land in Loup County adjacent to Custer County is assessed at a higher value because it is irrigated land; that the sales-assessment ratio for Loup County is 15.7 for rural and 40.07 for urban; that most sales of rural property are tracts which are purchased as additions to operating units; and that, generally, rural land sells at a price in excess of what the value might be if considered upon the basis of its productivity.

The order of the state board directed that the valuation of rural property in Loup County, as reflected by the 1965 abstract of assessment, be increased 52 percent.

The evidence relating to the sales-assessment ratio indicates that some increase in the value of rural real estate in Loup County should have been made. The increase which was made brought the sales-assessment ratio for rural property in Loup County to 23.86 which appears to be well below the average or median ratios for all counties as adjusted by the state board.

The county contends that the state board placed too much emphasis upon sales-assessment ratios and sale prices and did not give proper consideration to section 77-112, R. R. S. 1943, which provides as follows: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3)

desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; and (6) market value in the ordinary course of trade."

For purposes of taxation, the terms actual value, market value, and fair market value mean exactly the same thing. Richards v. Board of Equalization, 178 Neb. 537, 134 N. W. 2d 56. Many elements enter into a determination of actual value, some of which are set out in the statute.

Ordinarily, the objection to using sale price as the standard or evidence of value is the fact that the sale may not have been in the ordinary course of trade. The character and circumstances of the sale are important in determining to what extent the sale price may be used to fix the value of the property. The same difficulty is involved in the use of sales-assessment ratios. It is important that the computation include only representative sales with the consideration of each sale accurately determined.

At the hearing before the state board, the representatives of Loup County were given an opportunity to comment concerning the sales which were used in computing the sales-assessment ratios for Loup County. The representatives of Loup County stated that they did not believe that the sales-assessment ratio was "really a true picture," but also stated that they had no specific reason to challenge any particular sale as not being a bona fide sale.

Upon consideration of the entire record, we are unable to say that the action of the State Board of Equalization and Assessment, so far as Loup County is concerned, was arbitrary and capricious or prejudicial. The order is, therefore, affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent herein, and incorporate herein by reference the dissent filed in County of Lancaster v.

State Board of Equalization & Assessment, *post* p. 497, 143 N. W. 2d 885.

Additionally, I make the following observations. The Tax Commissioner's sales-assessment ratio for Loup County is: Urban - 40.07; rural - 15.7. Loup County was given a 52 percent increase on its rural property, but no deduction or decrease was given on its urban property, although it is far above the other counties. This county had a scientific appraisal in 1957, and used the appraisal figures at 100 percent as representing actual value. The appraisal has been maintained and there have been no decreases since that time, although the State Board of Equalization and Assessment did subsequently increase the valuation figures 24 percent.

The assessed value of Loup County land bordering Custer County has an assessed value approximately twice as high as the adjoining land in Custer County, which received only a 20 percent increase. Loup County land bordering other adjoining counties is assessed at approximately the same level as in those counties which, with the exception of Blaine, all received substantially lower increases. There is nothing in the record on the sales used to determine the ratio, except the statement that the prices paid were exorbitant. It would seem, however, that with a scientific appraisal in 1957, and a subsequent 24 percent raise, there must be factors present in the sales used which need explaining. The county contends that the State Board of Equalization and Assessment placed too much emphasis upon sales-assessment ratios, and did not give proper consideration to section 77-112, R. R. S. 1943, which sets out the criteria to be used to determine actual value for purposes of taxation. So far as the record herein is concerned, it is impossible to determine what the board did consider.

CARTER, J., joins in this dissent.