does not resolve that issue, it does not affect a substantial right of Charter West and therefore is not a final order under § 25-1902.

We note that it may have been more expedient for the district court to conduct an evidentiary hearing and defer any ruling on the motion to compel arbitration until the parties had an opportunity to present evidence on the issue of whether the real estate transaction involved interstate commerce. But the dismissal of the motion to compel arbitration without prejudice achieved essentially the same result, which was to defer a final determination of the arbitrability of the dispute. On this record, that determination has not yet been made, and therefore, there is no final, appealable order capable of appellate review.

## CONCLUSION

For the foregoing reasons, we conclude that we lack jurisdiction to review the order from which this appeal was taken, and we dismiss the appeal.

APPEAL DISMISSED.

————————

CARGILL MEAT SOLUTIONS CORPORATION,
APPELLEE, V. COLFAX COUNTY BOARD
OF EQUALIZATION, APPELLANT.

___ N.W.2d ___

Filed April 17, 2015.    No. S-14-701.

1. **Taxation: Judgments: Appeal and Error.** An appellate court reviews decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.
3. **Taxation: Appeal and Error.** An appellate court reviews questions of law arising during appellate review of decisions by the Tax Equalization and Review Commission de novo on the record.

4. **Statutes.** Statutory interpretation is a question of law.
5. **Taxation: Equity.** The assessment, levy, and collection of taxes are not equitable proceedings; they necessarily have to be governed by rules, and the taxing power and the taxpayers must comply with these rules.
6. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
7. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.
8. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.
9. **Taxation: Jurisdiction.** County boards of equalization can exercise only such powers as are expressly granted to them by statute, and statutes conferring power and authority upon a county board of equalization are strictly construed.
10. ____: ____. Where a county board of equalization's actions are void, the Tax Equalization and Review Commission lacks jurisdiction over the merits of the appeal.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Edmond E. Talbot III, Special Colfax County Attorney, for appellant.

Timothy L. Moll and Christopher C. Cassiday, of Rembolt Ludtke, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

A taxpayer timely filed a 2010 personal property tax return properly listing the taxable property, but the property was not placed on the tax rolls. The primary issue in this appeal is whether in 2013, the Colfax County Board of Equalization (Board) had statutory authority to add the property to the 2010 tax rolls. The Tax Equalization and Review Commission (TERC) considered and rejected two statutory

sources of authority, but the Board assigns error only as to one statute.[1]

Because § 77-1507(1) applies only to real estate and not to personal property, it did not authorize the Board's action. Without supporting statutory authority, the action was void. We therefore affirm TERC's decision reversing and vacating the Board's decision.

## II. BACKGROUND

### 1. Taxation of Personal Property

Under Nebraska law, the owner of personal property must compile a list of all its tangible personal property having a tax situs in Nebraska.[2] The list must be on the forms prescribed by the Department of Revenue's Tax Commissioner and must be filed as a personal property tax return on or before May 1 of each year.[3] A party seeking a personal property exemption shall file a claim on the form and supporting schedules prescribed by the Tax Commissioner.[4]

The county assessor reviews the personal property tax returns and changes the reported valuation of any item of taxable tangible personal property to conform the valuation to net book value.[5] The assessor also lists any item of taxable tangible personal property omitted from a personal property return and values the item at net book value.[6]

### 2. 2010 Personal Property
### Tax Return

Cargill Meat Solutions Corporation (Cargill) timely filed a personal property tax return for the 2010 tax year. As part of that return, Cargill submitted personal property schedules to the Colfax County assessor's office identifying numerous items

---

[1] See Neb. Rev. Stat. § 77-1507(1) (Cum. Supp. 2014).

[2] Neb. Rev. Stat. § 77-1201 (Reissue 2009).

[3] Neb. Rev. Stat. § 77-1229(1) (Reissue 2009); *Kaapa Ethanol v. Board of Supervisors*, 285 Neb. 112, 825 N.W.2d 761 (2013).

[4] See § 77-1229(2) and Neb. Rev. Stat. § 77-4105(2) (Reissue 2009).

[5] See Neb. Rev. Stat. § 77-1233.04(1) (Cum. Supp. 2014).

[6] *Id*.

of personal property. One of the schedules showed the assessed value of the property to be $18,382,151. The assessor accepted the return.

However, the personal property was not placed on the tax rolls in 2010, and no tax was assessed or paid. Because of an evidentiary ruling by TERC excluding an exhibit, the record sheds little light on the procedures followed or overlooked in 2010.

### 3. Action by Board

In October 2013, the Board sent a letter to Cargill stating that it was placing the personal property identified by Cargill in 2010 "back on the tax rolls." The Board's letter asserted that the assessor had "held the personal property schedule . . . pending an approval of the exemption," that no exemption had been authorized, and that the property had not been "placed back" on the tax rolls in 2010 due to a "clerical error." The letter "[gave] notice" that "[p]ursuant to . . . § 77-1507(1)," the property would be "placed back on the tax rolls for collection."

Cargill filed a protest of the Board's action, but the Board denied the protest. Cargill then appealed. Pursuant to § 77-1507(3), the appeal from the Board's denial of the protest was taken to TERC.

### 4. TERC's Hearing and Decision

Pursuant to the rules of practice and procedure for hearings before TERC, the chairperson issued an order to show cause and notice of hearing which directed the parties to participate in a hearing and show cause regarding jurisdiction.[7] The order stated in part: "[TERC] does not have jurisdiction to hear an appeals [sic] if: [TERC] does not have the power or authority to hear the appeal [if] the Board of Equalization does not have the authority to act."

During the show cause hearing before TERC, the Board sought to introduce into evidence an order of the Department of Revenue's Tax Commissioner concerning Cargill's 2011

---

[7] See 442 Neb. Admin. Code, ch. 5, § 029 (2011).

tax return. TERC sustained Cargill's objection to the exhibit, noting that it had not been exchanged in advance of the hearing. The Board's third assignment of error pertains to this exhibit.

At the time of the Board's attempt to offer this exhibit, Cargill's attorney explained that "from 2011, there's a personal property tax appeal pending that has to do with whether Cargill qualified for LB775 credits." He also explained that the Department of Revenue "sent a letter to Colfax County that said, 'Based on the results of 2011, we think you should include 2010 personal property tax back on the tax rolls . . . .'"

TERC entered a decision and order vacating and reversing the Board's decision. TERC first rejected the Board's claim that § 77-1507(1) authorized the Board's action of adding items of omitted personal property to the tax rolls. TERC reasoned that § 77-1507(1) applied to real property only. Thus, TERC stated that the Board's action, if performed under § 77-1507(1), was void and that both the Board and TERC lacked jurisdiction to hear the appeal in the absence of a statute authorizing the Board to place omitted personal property on the tax rolls.

TERC next stated that the letter sent by the Board to Cargill was void because it did not meet several requirements of Neb. Rev. Stat. § 77-1233.06 (Reissue 2009). TERC reasoned that the Board did not have the authority to make an initial change or to send notice under the statute and that without such authority, the Board's actions were void.

TERC also rejected the Board's claim that §§ 77-1233.04 and 77-1233.06 provided a process for correction based on clerical errors. TERC noted that the definition of omitted property "specifically excludes listing errors by the county assessor and clerical errors." TERC reasoned that the Board's action was void if it was relying on § 77-1233.04.

TERC ultimately determined that the Board's action was void. It recited that "[w]here the actions of an administrative agency are void, appellate administrative agencies lack subject matter jurisdiction." TERC concluded that the Board did not have authority to place the items of personal property on the

tax rolls and that, thus, TERC did not have jurisdiction over the appeal.

The Board timely appealed, and we moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[8]

## III. ASSIGNMENTS OF ERROR

The Board assigns that TERC erred in (1) interpreting § 77-1507 to apply to omitted real property only, (2) failing to determine whether mistakenly entering taxable tangible personal property as exempt was a clerical error, (3) failing to receive as an exhibit an order from the Tax Commissioner which directed county officials to place Cargill's taxable tangible personal property on the tax rolls, and (4) failing to consider whether Cargill was entitled to an exemption of its taxable tangible personal property.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews decisions rendered by TERC for errors appearing on the record.[9] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.[10]

[3,4] An appellate court reviews questions of law arising during appellate review of decisions by TERC de novo on the record.[11] Statutory interpretation is a question of law.[12]

## V. ANALYSIS

### 1. Statutory History

Before addressing the Board's specific arguments, we briefly discuss the history of valuation of personal property in Nebraska and how the statutory language of § 77-1507 evolved over the

---

[8]  See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[9]  *Conroy v. Keith Cty. Bd. of Equal.*, 288 Neb. 196, 846 N.W.2d 634 (2014).

[10]  *Id.*

[11]  *Id.*

[12]  *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013).

years. We note that § 77-1507 is included under the statutes in chapter 77, article 15, of the Nebraska Revised Statutes, which relate to "Equalization by County Board."

(a) Valuation of
Personal Property

Prior to 1992, personal property, like real property, was valued at its actual value.[13] A series of federal and state court decisions prompted changes to Nebraska's framework for taxation of personal property.[14]

In 1992, voters approved an amendment to portions of Neb. Const. art. VIII, §§ 1 and 2.[15] As amended, article VIII, § 1, provided that "tangible personal property, as defined by the Legislature, not exempted by this Constitution or by legislation, shall all be taxed at depreciated cost using the same depreciation method with reasonable class lives, as determined by the Legislature, or shall all be taxed by valuation uniformly and proportionately." And, as amended, article VIII, § 2, provided that "the Legislature may exempt inventory from taxation" and that "the Legislature may define and classify personal property in such manner as it sees fit, whether by type, use, user, or owner, and may exempt any such class or classes of property from taxation if such exemption is reasonable or may exempt all personal property from taxation." By means of special sessions, the Nebraska Legislature adopted the legislation necessary to implement these constitutional changes.[16]

Effective January 1, 1992, personal property, unless expressly exempt from taxation, was to be valued at its net book value.[17] The county board of equalization and the State Board of Equalization and Assessment—TERC's predecessor—were

---

[13] See Neb. Rev. Stat. § 77-201(1) (Supp. 1991).

[14] See, generally, *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991).

[15] See 1992 Neb. Laws, L.R. 219CA.

[16] See 1992 Neb. Laws, L.B. 1, 2d Spec. Sess. (Aug. 12, 1992) and 4th Spec. Sess. (Nov. 12, 1992).

[17] See § 77-201(3) (Reissue 1996).

no longer required to equalize the values of personal property, but their obligation to equalize the values of real property remained.[18]

### (b) Evolution of § 77-1507

Under a precursor to § 77-1507, the county board of equalization had the duty to "[f]airly and impartially equalize the valuation of the personal property of the county" and, upon complaint, to "review the assessment and correct the same as shall appear to be just."[19] The same statute authorized the county board of equalization to equalize the valuation of real property and provided that "in cases of evident error of assessment or of apparent gross injustice in overvaluation or undervaluation of real property, the county board of equalization may at its annual meetings consider and correct the same by raising . . . or by lowering the assessed valuation of such real property."[20] The statute further empowered the county board of equalization to "add to the assessment rolls any taxable property not included therein, assessing the same in the name of the owners thereof as the assessor should have done, but no personal property shall be so added unless the owner thereof is previously notified, if he be found in the county."[21]

By 1943, § 77-1507 had been condensed considerably. The statute, in its entirety, stated:

> The county board of equalization shall also add to the assessment rolls any taxable property not included therein, assessing the same in the name of the owners thereof as the assessor should have done, but no personal property shall be so added unless the owner thereof is previously notified, if he be found in the county.[22]

---

[18] See Neb. Rev. Stat. §§ 77-505 (Reissue 1996) and 77-1504 (Cum. Supp. 1992).

[19] Rev. Stat. § 6437 (1913).

[20] *Id.*

[21] *Id.*

[22] § 77-1507 (1943).

But like its predecessor statutes,[23] § 77-1507 pertained to both real property and personal property. The same continued to be true after a 1987 amendment.[24] The statute then provided in part:

> The county board of equalization may meet at any time upon the call of the chairperson or any three members of the board for the purpose of determining and equalizing the assessments of any omitted or undervalued real or personal property. The board shall add to the assessment rolls any taxable property not included therein, assessing the same in the name of the owners thereof. Omitted or undervalued personal property shall be added only after the owner or agent of the owner thereof is notified.[25]

As we noted above, the statutory framework for personal property tax in Nebraska changed dramatically beginning in 1992. But the above-quoted portion of the statute remained unchanged following a 1995 amendment.[26]

However, in 1997, the Legislature changed § 77-1507 significantly in connection with an overhaul of the taxation statutes.[27] As a result, the statute no longer contained any mention of personal property. Instead, it provided that the county board of equalization could "meet at any time for the purpose of assessing any omitted real property which was not reported to the county assessor pursuant to section 77-1318.01."[28] The statute further provided that "[n]o omitted real property which was properly reported to the county assessor pursuant to section 77-1318.01 shall be added to the assessment roll after July 25 of the year or years in which the property was omitted."[29]

---

[23] See § 6437 and Comp. Stat. §§ 5972 (1922) and 77-1702 (1929).

[24] See 1987 Neb. Laws, L.B. 508, § 48.

[25] § 77-1507 (Cum. Supp. 1988).

[26] See § 77-1507 (Reissue 1996) and 1995 Neb. Laws, L.B. 490, § 150.

[27] See 1997 Neb. Laws, L.B. 270, § 89.

[28] § 77-1507(1) (Cum. Supp. 1998).

[29] § 77-1507(4).

A 1999 amendment[30] added the provision on which the Board relies. This change allowed the county board of equalization to meet "for clerical errors as defined in section 77-128 that result in a change of valuation."[31] Although the Board contends that this language applies to personal property, the word "personal" does not appear in the statute as amended in 1999.

The statute was later amended several more times,[32] but no reference to personal property was ever reinserted. Thus, for purposes of our inquiry, the statute has not changed in any significant way since 1999.

Currently, § 77-1507(1) (Cum. Supp. 2014) states in part:

> The county board of equalization may meet at any time for the purpose of assessing any omitted real property that was not reported to the county assessor pursuant to section 77-1318.01 and for correction of clerical errors as defined in section 77-128 that result in a change of assessed value. The county board of equalization shall give notice of the assessed value of the real property to the record owner or agent at his or her last-known address. For real property which has been omitted in the current year, the county board of equalization shall not send notice pursuant to this section on or before June 1.
>
> Protests of the assessed value proposed for omitted real property pursuant to this section or a correction for clerical errors shall be filed with the county board of equalization within thirty days after the mailing of the notice. All provisions of section 77-1502 except dates for filing a protest, the period for hearing protests, and the date for mailing notice of the county board of equalization's decision are applicable to any protest filed pursuant to this section.

With that history in place, we turn to the issues on appeal.

---

[30] See 1999 Neb. Laws, L.B. 194, § 27.

[31] § 77-1507 (Reissue 2003).

[32] See 2005 Neb. Laws, L.B. 263, § 14, and L.B. 283, § 5; 2006 Neb. Laws, L.B. 808, § 39; 2010 Neb. Laws, L.B. 877, § 5; and 2011 Neb. Laws, L.B. 384, § 17.

## 2. Applicability of § 77-1507

[5] The chief issue is whether in 2013, § 77-1507(1) empowered the Board to add the specified personal property to the 2010 tax rolls. As this court explained over 100 years ago, the assessment, levy, and collection of taxes are not equitable proceedings; they necessarily have to be governed by rules, and the taxing power and the taxpayers must comply with these rules.[33] At various times, the Board has relied on either § 77-1507(1) or § 77-1233.04. TERC concluded that neither statute authorized the Board to place the personal property on the tax rolls for 2010. On appeal, the Board does not assign error to TERC's finding that § 77-1233.04 did not apply. Thus, we consider only whether § 77-1507(1) was applicable under the circumstances of this case.

The Board argues that TERC erred in interpreting § 77-1507(1) to apply to omitted real property only. The Board also contends that the statute allows for correction of clerical errors concerning personal property. We disagree that § 77-1507(1) applies to personal property.

The plain language of § 77-1507(1), its reading in the context of other statutes, and the Nebraska Administrative Code support our conclusion that § 77-1507(1) applies only to real property. Each reason requires elucidation.

[6] We primarily rely on the plain language of the statute, both generally and specifically. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[34]

The general language of the statute refers only to real property. The evolution of § 77-1507, which we have set forth above, shows deliberate action by the Legislature to change the statute from applying to both real and personal property to applying solely to real property. Subsequent amendments to the statute were made, but none of them restored personal property to the section's scope.

---

[33] See *Darr v. Dawson County*, 93 Neb. 93, 139 N.W. 852 (1913).

[34] *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014).

The specific language of the statute also demonstrates that it applies only to real property. The statute explicitly mentions real property four times, while never referring to personal property. The Board observes that although § 77-1507(1) specifically refers to "omitted real property," no property type is specified with respect to the correction of clerical errors. It follows, they argue, that the latter phrase was intended to apply to all "property," whether real or personal.

But that sentence must be read in context. The key language appears in the first two sentences. The first sentence states, "The county board of equalization may meet at any time for the purpose of assessing any omitted real property . . . and for correction of clerical errors . . . ." The second sentence states, "The county board of equalization shall give notice of the assessed value of the real property to the record owner or agent . . . ."[35] In essence, the Board is trying to insert the words "or personal" into the latter sentence. Without those words, the first sentence would supposedly allow the board to change the value of personal property, but the second sentence would require notice only to owners of real property. That makes no sense.

[7] And we cannot read those words into the statute. It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[36] If the Legislature had intended to allow a county board of equalization to correct a clerical error concerning personal property, it surely would have changed the second sentence of § 77-1507(1) to require notice to owners of "real or personal property."

[8] Reading § 77-1507 in the context of other statutes within the chapter on revenue and taxation also persuades us that it applies to real property only. Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different

---

[35] § 77-1507(1).

[36] *Johnson v. City of Fremont*, 287 Neb. 960, 845 N.W.2d 279 (2014).

provisions are consistent, harmonious, and sensible.[37] Statutes mentioning § 77-1507 do so in the context of real property.[38] And, as Cargill highlights, the overall tax scheme addresses personal property and real property separately for purposes of omitted property and correction of errors. Section 77-1507 pertains to real property, while § 77-1233.04 addresses the procedure for personal property.

The regulations in the Nebraska Administrative Code also demonstrate that § 77-1507(1) is limited to the correction of clerical errors for real property only. The chapter concerning real property contains several regulations concerning clerical errors,[39] while the chapter addressing personal property contains no regulation mentioning clerical errors.[40] Because we conclude that § 77-1507 applies to correction of clerical error concerning real property only, we need not decide whether a clerical error occurred in this case.

[9] We conclude that § 77-1507(1) does not apply to personal property and, thus, did not give the Board authority to place Cargill's personal property on the tax rolls. County boards of equalization can exercise only such powers as are expressly granted to them by statute, and statutes conferring power and authority upon a county board of equalization are strictly construed.[41] Because the Board lacked statutory authority under § 77-1507(1) to place Cargill's personal property on the tax rolls, its action was void.[42]

---

[37] *Professional Mgmt. Midwest v. Lund Co.*, 284 Neb. 777, 826 N.W.2d 225 (2012).

[38] See Neb. Rev. Stat. §§ 77-202.03(4) and 77-1317 (Cum. Supp. 2014) and 77-1345(3) and 77-1345.01(4) (Reissue 2009). Compare Neb. Rev. Stat. § 77-5017(2) (Cum. Supp. 2014).

[39] See 350 Neb. Admin. Code, ch. 10, §§ 002.06, 003.02B(2), 003.02G, 003.04C, 003.06H, and 003.07 (2014).

[40] See 350 Neb. Admin. Code, ch. 20 (2009).

[41] *John Day Co. v. Douglas Cty. Bd. of Equal.*, 243 Neb. 24, 497 N.W.2d 65 (1993).

[42] See, generally, *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010); *Big John's Billiards v. Balka*, 254 Neb. 528, 577 N.W.2d 294 (1998).

### 3. Remaining Assignments
### of Error

[10] We need not address the Board's remaining assignments of error. Because the Board did not have statutory authority to add Cargill's personal property to the tax rolls under § 77-1507(1) and because the Board does not challenge TERC's finding that § 77-1233.04 did not provide such authority, the Board's action was void. Where a county board of equalization's actions are void, TERC lacks jurisdiction over the merits of the appeal.[43]

## VI. CONCLUSION

Our conclusion is driven by the very narrow way in which the issue was presented to us. We confront both a limited record and the Board's reliance on § 77-1507(1) to the exclusion of any other potential avenue of addressing the problem. We were not asked to review whether § 77-1233.04 would allow the county assessor to make this change, and we therefore express no opinion on that question. We are also constrained by the language used by the Legislature in its 1999 amendment to § 77-1507(1), which did not make the statute applicable to personal property. We conclude that the Board's action in placing Cargill's personal property on the tax rolls for 2010 was void, because it lacked statutory authority to do so under § 77-1507(1). TERC reached the same conclusion and correctly determined that it lacked jurisdiction to hear the appeal. We affirm.

Affirmed.

---

[43] See *Darnall Ranch v. Banner Cty. Bd. of Equal.*, 280 Neb. 655, 789 N.W.2d 26 (2010).